**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| VOIP-PAL.COM, INC., | |
| Plaintiff | |
| v. | **CASE NO. 6:20-cv-00272-ADA** |
| AMAZON.COM, INC.,<br>AMAZON TECHNOLOGIES, INC.,<br>AMAZON.COM SERVICES LLC, and<br>AMAZON WEB SERVICES, INC., | |
| Defendants. | |

**OPPOSED MOTION OF AMAZON.COM, INC., AMAZON.COM SERVICES
LLC, AND AMAZON WEB SERVICES, INC. TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(a) OR TO STAY THE CASE**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ................................................... 2

        A.      In the 2016 Cases, Judge Koh Analyzed and Invalidated Two Patents from
                the Same Family ................................................................................. 2

        B.      In the 2018 Cases, Judge Koh Analyzed and Invalidated Four Additional
                Patents from the Same Family ........................................................... 3

        C.      The '606 Patent Claims Are Very Similar to the Patent Claims with which
                Judge Koh Is Already Familiar .......................................................... 4

        D.      Judge Koh Has Already Determined that Cases Concerning the '606 Pa-
                tent Are Related to the Prior Cases that She Decided ......................... 5

        E.      Amazon's Accused Technology Was Developed in Seattle, Toronto, the
                San Francisco Bay Area, and India .................................................... 6

III.    LEGAL STANDARD FOR MOTIONS TO TRANSFER ............................. 7

IV.     ARGUMENT ................................................................................................. 8

        A.      This Case Should Be Transferred to the Northern District of California ............. 8

                1.      The Case Against the Moving Amazon Defendants Could Have
                        Been Filed in the Northern District of California .................................... 8

                2.      The Conservation of Judicial Economy Weighs Heavily Towards
                        Transferring the Case to the Northern District of California ..................... 8

                3.      Transfer to the Northern District of California Would Further the
                        Interest of Justice .................................................................................. 10

                4.      The Additional Private Factors Weigh in Favor of Transfer to the
                        Northern District of California or Are Neutral ........................................ 12

                        a.      The Relative Ease of Access to Sources of Proof is Neutral ....... 12

                        b.      The Availability of Compulsory Process to Secure the At-
                                tendance of Witnesses Weighs in Favor of Transfer .................. 12

                        c.      The Cost of Attendance for Willing Witnesses Weighs in
                                Favor of Transfer ....................................................................... 13

**TABLE OF CONTENTS**
(continued)

**Page**

5.    The Additional Public Factors Weigh in Favor of Transfer to the Northern District of California or Are Neutral ........................................ 14

a.    The Court Congestion Factor Weighs in Favor of Transfer or, at Worst, Is Neutral................................................................ 14

b.    The Other Public Factors Are Neutral ........................................ 15

B.    If Transfer Is Denied, this Case Should Be Stayed............................................. 15

V.    CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Alexander v. Franklin Res., Inc.,*
    No. 06-7121, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) .....................................................11

*Aventis Pharms. Inc. v. Teva Pharms. USA Inc.,*
    No. 2:06-CV-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007)..........................................11

*DataTreasury Corp. v. First Data Corp.*,
    243 F. Supp. 2d 591 (N.D. Tex. 2003) ...................................................................................10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................................12, 14

*In re HP Inc.*,
    No. 2018-0149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................................7

*In re Medrad, Inc.*,
    No. 586, 1999 WL 507359 (Fed. Cir. June 25, 1999) ............................................................10

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011)..............................................................................................10

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)..............................................................................................10

*Logan v. Hormel Foods Corp.*,
    No. 6:04-CV-211, 2004 WL 5216126 (E.D. Tex. Aug. 25, 2004) ...........................................7

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)................................................................................................7

*SynKloud Techs., LLC v. Dropbox, Inc.*,
    No. 19-00526, 2020 WL 2528545 (W.D. Tex., May 18, 2020) ...............................................7

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-cv-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ........................................8

**STATUTES**

28 U.S.C. § 1400(b) ........................................................................................................................8

28 U.S.C. § 1404(a) ................................................................................................................1, 7, 8

35 U.S.C. § 101................................................................................................................... 1, 2, 3

## TABLE OF AUTHORITIES
(Continued)

CASES                                                                                          PAGE(S)

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(3)....................................................................................................2

M.P.E.P. § 804 ...............................................................................................................5

15 Wright & Miller, Fed. Prac. & Proc. § 3854 (1986)................................................10

## I.      INTRODUCTION

This case concerns a single patent, U.S. Patent No. 10,218,606 ("the '606 patent"), which is a continuation in a family of six other patents that VoIP-Pal previously asserted against Amazon and others across six cases litigated in the Northern District of California.  The '606 patent shares the same specification with, and has claims very similar to, the patents litigated in California.

The Honorable Lucy H. Koh presided over those six earlier cases for over 14 months.  And in two extensive decisions spanning 112 pages, Judge Koh analyzed VoIP-Pal's asserted patent claims, the disclosures in the common specification, and the purported benefits of the invention alleged in VoIP-Pal's complaints.  Based on that analysis, Judge Koh made legal determinations, addressed any alleged factual disputes, and determined that the asserted claims were invalid under 35 U.S.C. § 101.  One of those decisions has been affirmed by the Court of Appeals for the Federal Circuit, and briefing on VoIP-Pal's appeal of the second decision is complete.

Even though VoIP-Pal sought and received leave to amend its California complaint against Amazon, VoIP-Pal chose not to assert the '606 patent in that case.  Instead, VoIP-Pal held the '606 patent in reserve pending the resolution of the California cases.  Dissatisfied with those results, VoIP-Pal now wants to litigate the '606 patent against Amazon in a forum that has no connection to the case.  No party is headquartered here.  No relevant witnesses are located here.  No evidence is located here.  And most importantly, there is another court that is already intimately familiar with the technology at issue, this family of patents, and the allegations in VoIP-Pal's complaint.

In light of Judge Koh's extensive familiarity with issues concerning the '606 patent and the lack of any relevant connection between VoIP-Pal's cause of action and this District, the § 1404(a) transfer factors weigh heavily in favor of transferring this case to the Northern District of California.  Amazon therefore respectfully requests that the Court transfer this case.  Should the

Court deny Amazon's motion to transfer, Amazon respectfully requests that this Court stay this action pending resolution of the motions to dismiss the Northern District of California actions.[1]

## II.     RELEVANT FACTUAL BACKGROUND

### A.     In the 2016 Cases, Judge Koh Analyzed and Invalidated Two Patents from the Same Family.

In 2016, VoIP-Pal filed four cases in the District of Nevada—against Apple, AT&T, Twitter, and Verizon—alleging amongst them infringement of two patents, U.S. Patent Nos. 8,542,815 and 9,179,005.  (*See, e.g.*, Ex. 1.)[2]  The *Twitter* case was ordered transferred to the Northern District of California, and VoIP-Pal subsequently agreed to transfer the other cases there.  All four cases were then assigned to Judge Lucy Koh, who held two case management conferences to discuss the nature of VoIP-Pal's claims, the asserted patents, and the relationship between the cases. The parties exchanged discovery, including infringement and invalidity contentions.

The defendants in the 2016 cases filed a consolidated motion to dismiss VoIP-Pal's claims as invalid under 35 U.S.C. § 101.  (Ex. 2.)  On March 25, 2019, Judge Koh granted the motion in a 44-page opinion detailing the bases for the Court's decision.  (Ex. 3.)  Judge Koh addressed the relevant factual background (*id.* at 2-20), analyzed the asserted claims, and concluded that they were directed to the abstract idea of routing a call based on characteristics of the caller and callee, recited in generalized steps.  (*Id.* at 21-30, 34-39.)  Judge Koh also concluded that none of the asserted claims recited limitations that transformed the nature of the claims into a patent-eligible concept—noting that, among other things, the patents' specifications confirmed that the claimed

---

[1] Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. are collectively referred to as "Amazon."  Amazon Technologies, Inc. has separately moved to dismiss the complaint against it under Fed. R. Civ. P. 12(b)(3) due to improper venue.

[2] All exhibits cited herein are exhibits to the Declaration of Daniel T. Shvodian, filed concurrently herewith, unless otherwise noted.

elements were not inventive.  (*Id*. at 30-34, 39-42.)  Finally, Judge Koh analyzed the factual alle-gations of alleged benefits of the invention in VoIP-Pal's complaints, ultimately determining that those alleged benefits did not flow from the limitations of the claims and, therefore, did not pre-clude resolution of the motion.  (*Id*. at 42-44.)

On March 16, 2020, the Federal Circuit affirmed Judge Koh's decision invalidating the asserted claims of the '815 and '005 patents.  (Ex. 4.)  VoIP-Pal filed petitions for rehearing and rehearing *en banc*, but the Federal Circuit denied both.  (Ex. 5.)

**B.    In the 2018 Cases, Judge Koh Analyzed and Invalidated Four Additional Patents from the Same Family.**

In May and June 2018, VoIP-Pal filed two more cases in the District of Nevada, this time against Amazon and Apple.  VoIP-Pal alleged infringement of four patents from the same family—the '762, '330, '002, and '549 patents.  (*See*, *e.g.*, Ex. 6.)  Those four patents share a common specification with, and recite claims similar to, the two patents asserted in the 2016 cases.

VoIP-Pal agreed to transfer the 2018 cases to the Northern District of California and—like the 2016 cases—they were assigned to Judge Koh and consolidated with the other cases for pretrial purposes.  (Ex. 7 at 2:25-3:21.)  The parties then exchanged discovery, including infringement and invalidity contentions.  The parties also exchanged claim construction disclosures and submitted *Markman* briefs.  (Ex. 8 at Dkt. Nos. 71-73.)

Judge Koh also considered and granted VoIP-Pal's belated motion to amend its complaints against Amazon and Apple.  (Ex. 9.)  When VoIP-Pal amended its complaints, it chose not to assert the '606 patent, even though it had issued prior to VoIP-Pal's motion to amend.  (Ex. 10.)

Apple and Amazon moved to dismiss the asserted claims of the four patents-in-suit as in-valid under § 101.  On November 1, 2019, Judge Koh granted the motion, issuing a 68-page opin-ion detailing the bases for her decision.  (Ex. 11.)  In that order, Judge Koh outlined the relevant

factual background, including the disclosures of the asserted claims (*id*. at 2-7), the complex pro-cedural histories of the litigations and related Patent Office proceedings (*id.* at 8-9), and the parties' positions on the representative nature of certain claims to the invalidity analysis (*id.* at 18).  Ulti-mately, the Court did not adopt any party's position on representative claims.  Instead, it grouped the claims into four categories after conducting its own extensive analysis of the claim limitations.  (*Id*. at 18-31.)

Using that framework, Judge Koh analyzed the disclosures of the asserted claims and con-cluded that they were directed to the abstract ideas of call routing or routing a communication based on characteristics of participants.  (*Id.* at 31-57.)  Judge Koh also concluded that none of the asserted claims recited limitations that transformed the nature of the claims into a patent-eligible concept, noting that, among other things, the patents' specifications confirmed that the claimed elements were not inventive.  (*Id.* at 57-67.)  Finally, Judge Koh analyzed the applicability of factual allegations contained in VoIP-Pal's complaints—accepting them as true—but ultimately determining that the purported benefits of the claims did not flow from the claims themselves and therefore did not preclude resolution of the motion.  (*Id*. at 67-68.)

### C.   The '606 Patent Claims Are Very Similar to the Patent Claims with which Judge Koh Is Already Familiar.

The '606 patent is part of the same family of patents previously litigated by VoIP-Pal be-fore Judge Koh.  It shares the same title, same named inventors, and same specification as the previously-litigated patents.  (*See* Dkt. 1-1.)  It also claims priority to the same provisional and parent applications.  The claims are also very similar—during prosecution of the '606 patent, VoIP-Pal had to file a terminal disclaimer to overcome the Patent Office's rejection under the non-

statutory double patenting doctrine (Ex. 12 at 2-5), which is "primarily intended to prevent pro-longation of the patent term by prohibiting claims in a second patent ***not patentably distinct*** from claims in a first patent" (M.P.E.P. § 804 (emphasis added)).

The claims of the '606 patent also use many of the same claim terms used in the previously-litigated patents—such as "participant," "identifier," "attribute," "profile," and "routing message"—that Judge Koh already extensively analyzed.  The substantial overlap of the claims is shown in Exhibit 13, which shows a comparison of the limitations of claim 1 of the '606 patent with limita-tions of the patents previously asserted and litigated by VoIP-Pal.

Likewise, there is a substantial overlap of the alleged benefits asserted by VoIP-Pal in its Complaint in this action and the complaints in the prior cases.  Specifically, "user-specific com-munication handling," "routing transparency," "resiliency," and "communication blocking" are the exact same alleged benefits that Judge Koh extensively considered and addressed in the prior cases.  (*Compare* Dkt. 1 at ¶¶ 32-38 *with* Ex. 10 at ¶¶ 32-38.)  Indeed, the majority of the para-graphs in the Complaint in this action describing the alleged benefits of the invention were copied almost word-for-word from the complaint against Amazon in the Northern District of California case.  (*Compare* Dkt. 1 at ¶¶ 32-40 *with* Ex. 10 at ¶¶ 32-40.)  Further, VoIP-Pal has accused the exact same Amazon products, services, and conduct of infringement in the two actions.  (*Compare* Dkt. 1 at ¶¶ 43-45 *with* Ex. 10 at ¶¶ 46-48.)

### D.   Judge Koh Has Already Determined that Cases Concerning the '606 Patent Are Related to the Prior Cases that She Decided.

Four declaratory judgment actions involving VoIP-Pal and the '606 patent are currently pending in the Northern District of California.  Though the cases were not originally assigned to Judge Koh, she held, over oppositions by VoIP-Pal, that each of the declaratory judgment actions is "related" to the earlier VoIP-Pal cases that she already decided.  (*See*, *e.g.*, Ex. 14.)  In doing so,

Judge Koh rejected VoIP-Pal's assertion that there are sufficient differences between the claims of the '606 patent and the earlier-asserted patents that would negate the benefit of judicial economy or the danger of inconsistent rulings if the cases were assigned to another district court judge.  (Ex. 15 (VoIP-Pal's rejected opposition regarding relating the cases).)

   E.   **Amazon's Accused Technology Was Developed in Seattle, Toronto, the San Francisco Bay Area, and India.**

VoIP-Pal alleges that Amazon infringes the '606 patent through a platform VoIP-Pal identifies as "Alexa Calling and Messaging System."  (Dkt. 1, ¶¶ 43-45.)  That accused technology was developed by Amazon's Alexa Communications team and is officially known as Alexa Calling and Messaging.  (Hardie Decl., ¶¶ 7-8.)[3]  A majority of Amazon's employees on the Alexa Communications team who designed, developed, or managed work on the accused technology work out of Amazon's Seattle headquarters.  (*Id.*, ¶ 9.)  Of the remaining employees, most work out of Amazon's Toronto, Canada offices.  (*Id.*)  A number of Amazon employees responsible for device software on the Alexa Communications team work out of Amazon's offices in the San Francisco Bay Area.  (*Id.*)  A small number of Alexa Communications team members who designed, developed, or managed work on the accused technology also work out of Amazon's India offices.  (*Id.*)

Outside of the Alexa Communications team, Amazon employs a large number of people in Amazon's Sunnyvale, California offices who design and develop hardware and software for Amazon devices.  (*Id.*, ¶ 10.)  Those Sunnyvale employees work with the Alexa Communications team when designing and developing calling and messaging features.  (*Id.*)

---

[3] All references to the "Hardie Decl.," "Hayden Decl.," or "Wallace Decl." are to the concurrently-filed Declarations of Tony Hardie, Scott Hayden and Dennis Wallace, respectively.

Amazon is not aware of anyone who is located in the Western District of Texas and who designed, developed, managed, or otherwise worked on any aspect of the accused technology.  (*Id.*, ¶ 13.)  One Amazon employee located in the Dallas-Fort Worth area previously worked on the accused technology, but he has not worked on the technology for several years.  (*Id.*)

## III.    LEGAL STANDARD FOR MOTIONS TO TRANSFER

This Court is very familiar with the law regarding transfers under 28 U.S.C. § 1404(a), including the private and public factors that the Court considers in deciding whether to transfer a case, so Amazon will not repeat a discussion of all of the factors here.

But one highly relevant issue in this case is the conservation of judicial economy, which this Court has considered under the private interest factor of practical problems that make trial of a case easy, expeditious, and inexpensive.  *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-cv-00526-ADA, 2020 WL 2528545, at *6 (W.D. Tex., May 18, 2020).  Other courts have considered judicial economy under the public interest factors given that the conservation of judicial resources also impacts the courts.  *See Logan v. Hormel Foods Corp.*, No. 6:04-CV-211, 2004 WL 5216126, at *2 (E.D. Tex. Aug. 25, 2004).  And while no one factor is dispositive in resolving motions to transfer, the interest of judicial economy can be dispositive when no other factor weighs strongly against transfer.  *See Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("[I]n a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.").

Additionally, a party's presence in the transferor district does not substantially affect the transfer analysis if that presence has minimal relevance to the case.  *See*, *e.g.*, *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *1–2 (Fed. Cir. Sept. 25, 2018) (finding that transfer to Northern District of California was appropriate even when the defendant maintained an office within the

transferor court); *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-cv-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) (granting a motion to transfer when the defendant's employees in its Austin office "had no involvement with the accused product, nor did they have specific knowledge about design, development, marketing, or sales that would be relevant to this case").

## IV.    ARGUMENT

### A.    This Case Should Be Transferred to the Northern District of California.

#### 1.    The Case Against the Moving Amazon Defendants Could Have Been Filed in the Northern District of California.

The first step in the Section 1404(a) transfer analysis is met because VoIP-Pal could have filed its complaint against the three moving Amazon defendants in the Northern District of California.  Under 28 U.S.C. § 1400(b), venue is appropriate "where the defendant resides" or "has committed acts of infringement and has a regular and established place of business."  The moving Amazon defendants have offices and employees in the Northern District of California.  (Hardie Decl., ¶¶ 9-10; Hayden Decl., ¶ 4; Wallace Decl., ¶ 4.)  Additionally, VoIP-Pal has accused conduct of the Amazon defendants that has occurred in the Northern District of California, such as the selling of the accused Amazon Echo devices or Fire Tablets.  (Dkt. 1 at ¶¶ 43-48.)

#### 2.    The Conservation of Judicial Economy Weighs Heavily Towards Transferring the Case to the Northern District of California.

The conservation of judicial economy weighs heavily in favor of transferring this case to the Northern District of California given Judge Koh's familiarity with the technology and issues in this case.  Over the course of fourteen-and-a-half months, Judge Koh presided over six cases that combined encompassed six patents that are related to the '606 patent that VoIP-Pal asserts in this case.  During the course of those cases, Judge Koh became familiar with the technology at issue and the alleged inventions recited in those patents.  In evaluating those alleged inventions,

she issued separate 44-page and 68-page orders in which she conducted detailed comparisons and analyses of the claims and addressed VoIP-Pal's assertions regarding the alleged inventions.

While the '606 patent was not at issue in those prior cases, it issued from a continuation application from those patents and therefore shares the same specification.  And though the claims of the '606 patent have some variation from the claims of those earlier patents, there is a substantial overlap of claim terms and the overall concept of the claims.  (*See* Ex. 13.)  This overlap is demonstrated by the double patenting rejections issued by the Patent Office over those earlier patents during the prosecution of the '606 patent where the Patent Office found that the claims were not patentably distinct.  (Ex. 12 at 2-5.)

Moreover, Judge Koh already held that cases concerning the '606 patent will significantly overlap with issues addressed in the earlier cases she decided.  For example, Twitter moved to have its declaratory judgment action designated as "related" to VoIP-Pal's prior infringement action against Twitter that was based upon one of the related parent patents.  (*See* Ex. 16.)  Under Northern District of California Civil Local Rule 3-12(a), "[a]n action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."  VoIP-Pal opposed the motion by asserting that there are differences in the claims, that the prior case was pending before Judge Koh for a limited period of time, and that there would be no duplication of labor or expense if the case were to be assigned to a different judge.  (*See* Ex. 15 at 1:26-2:3.)  Judge Koh flatly rejected VoIP-Pal's arguments and held that Twitter's declaratory judgment action concerning the '606 patent is related to VoIP-Pal's prior action against Twitter.  (Ex. 14.)  Judge Koh similarly held that declaratory judgment actions filed by Apple, AT&T, and Verizon are related to the prior cases

against those companies and to the other '606 patent cases.  (Exs. 17-19.)  As a result, Judge Koh ordered that all of the declaratory judgment actions should be assigned to her to avoid duplication of labor and expense.

That VoIP-Pal's infringement case against Amazon concerning the '606 patent involves substantially the same issues as its prior litigation against Amazon in the Northern District of California is further demonstrated by the fact that VoIP-Pal has accused the exact same Amazon products and services of infringement.  (*Compare* Dkt. 1 at ¶¶ 43-45 *with* Ex. 10 at ¶¶ 46-48.) Moreover, VoIP-Pal has alleged that the inventions claimed in the '606 patent have the same four improvements over the prior art that VoIP-Pal alleged—and that Judge Koh extensively addressed—in the prior litigations.  (*Compare* Dkt. 1 at ¶¶ 32-40 *with* Ex. 10 at ¶¶ 32-40.)

Thus, there is a substantial overlap of issues and technology between the six prior cases litigated in the Northern District of California and VoIP-Pal's assertion of the '606 patent in this case.  Given that overlap, there would be a substantial savings in judicial economy by having the issues heard by the same judge that presided over and decided those prior cases.

### 3.    Transfer to the Northern District of California Would Further the Interest of Justice.

"[I]t is well established that 'the interest of justice' is an important factor in the transfer analysis."  *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003) (citing *In re Medrad, Inc.*, No. 586, 1999 WL 507359, at *2 (Fed. Cir. June 25, 1999) (citing 15 Wright & Miller, Fed. Prac. & Proc. § 3854 at 439-41 (1986))).  And in analyzing transfer requests, courts have cautioned against forum shopping and attempts to manipulate venue.  *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and directing transfer under Fifth Circuit law to "ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381

(Fed. Cir. 2010) (granting mandamus and directing transfer under Fifth Circuit law where plaintiff tried to "game the system"); *Alexander v. Franklin Res., Inc.*, No. C 06-7121 SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (inferring forum shopping and disregarding plaintiff's forum choice where he filed a similar lawsuit in New Jersey and, after receiving unfavorable rulings from that court, filed another case in California).

While a plaintiff's decision to file a case in a potentially more favorable forum might not be objectionable, the type of forum shopping that VoIP-Pal has engaged in here runs counter to the interests of justice. VoIP-Pal litigated its six prior cases concerning six related patents in the Northern District of California. Despite having the opportunity to assert the related '606 patent in at least two of those cases (against Amazon and Apple), VoIP-Pal held it in reserve to see how its earlier cases were resolved. And now, dissatisfied with the results of the California cases, VoIP-Pal has chosen a different forum that has no relation to the issues in this case. In contrast, Judge Koh has extensive familiarity with the relevant family of patents, and transferring this case to the Northern District of California would avoid the inefficiencies, inconsistencies, and increased expense that would result from proceeding with this case in this Court. Thus, the interest of justice strongly supports transfer of this case to the Northern District of California. *See*, *e.g.*, *Aventis Pharms. Inc. v. Teva Pharms. USA Inc.*, No. 2:06-CV-469, 2007 WL 2823296, at *2 (E.D. Tex. Sept. 27, 2007) (transferring case where plaintiff's prior suits asserting related patents were pending in another district where the judge had "extensive familiarity" with the parties, accused product, theories of infringement, and prior art references and because it appeared plaintiff filed suit in a different forum because the suit presented the same issues that were unsuccessfully presented before the prior judge).

**4.      The Additional Private Factors Weigh in Favor of Transfer to the Northern District of California or Are Neutral.**

**a.      The Relative Ease of Access to Sources of Proof is Neutral.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.*

Based on VoIP-Pal's allegations, Amazon believes that the bulk of the documents relevant to this case are located in the Seattle area.  Although Amazon's technical documentation related to the accused technology are stored on servers in Oregon, the people who maintain the content of those documents are located in Amazon's Seattle headquarters.  (Hardie Decl., ¶ 11.)  And to the extent VoIP-Pal has any relevant documents, they will likely be in the Seattle area as well because VoIP-Pal's principal place of business is in Bellevue, Washington.  (Dkt. 1, ¶ 1.)

This factor is therefore neutral because documents in Seattle will be equally accessible in the Northern District of California and Western District of Texas.

**b.      The Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs in Favor of Transfer.**

Third-party witnesses who can testify about the development, design, features, capabilities, and public availability of prior art systems can be highly relevant witnesses at a patent infringement trial.  In VoIP-Pal's prior suit against Amazon, Amazon and Apple served joint invalidity contentions for the four asserted patents.  (Ex. 20.)  In those invalidity contentions, Amazon and Apple identified fifteen prior art systems.  (*Id.* at 10-30.)  As shown in the table below, six of those prior art systems were developed by companies that are or were at the relevant time headquartered within 100 miles of the Northern District of California:

| Prior Art System | Company Name | Headquarters Location |
|---|---|---|
| Avaya | Avaya Inc. | Santa Clara, CA |
| Skype | Skype Inc. | San Jose, CA |
| Skype 1.4 | Skype Inc. | San Jose, CA |
| Cisco Call Manager | Cisco Systems, Inc. | San Jose, CA |
| Sylantro | Sylantro Systems | Campbell, CA |
| Altigen | Altigen Communications | Milpitas, CA |

(Exs. 21-25.)  Thus, it is highly likely that witnesses with relevant knowledge about those systems will be located within the subpoena power of the Northern District of California.

Of the remaining prior art systems identified in those invalidity contentions, the only system that was developed by a company that is headquartered within the subpoena power of the Western District of Texas is the CallVantage system developed by AT&T.  (Ex. 20 at 22-23.)  But because AT&T is a defendant also accused of infringing the '606 patent, it will be far easier to get a willing witness to testify at trial about that system without need to compel their attendance.

Given the close similarity between the claims of the '606 patent and the limitations of the claims at issue in the prior Amazon action, these same prior art systems will be relevant to proving the invalidity of the claims of the '606 patent.  Moreover, these prior art systems were not cherry-picked for purposes of supporting a motion to transfer because they were identified in the prior Amazon case after it had already been voluntarily transferred to the Northern District of California and long before VoIP-Pal filed any lawsuits in the Western District of Texas.

Therefore, this factor weighs heavily in favor of transfer.

    **c. The Cost of Attendance for Willing Witnesses Weighs in Favor of Transfer.**

Amazon employees who worked on the accused technology are located in Seattle, Toronto, the San Francisco Bay Area, and India.  (Hardie Decl., ¶¶ 9-10.)  The Amazon employees who are

knowledgeable about sales, financial, and marketing information related to the accused technology are located in Seattle.  (*Id.*)  Amazon is not aware of any employees who may be witnesses and who are located in the Western District of Texas.  (*Id.*, ¶ 13.)  Thus, at least some of Amazon's trial witnesses might be located in the Northern District of California.  And other likely trial witnesses are located in Seattle, which is much closer to the Northern District of California.  In contrast, no Amazon witnesses are expected to be located in the Western District of Texas.

Furthermore, Amazon is not aware of any VoIP-Pal witnesses who are located in the Western District of Texas.  VoIP-Pal is incorporated in Nevada and headquartered in Bellevue, Washington.  (Dkt. 1, ¶ 1.)  Its U.S.-based executives (who could be found) appear to be located in or around San Francisco, Washington state, and Utah – all of which are closer to the Northern District of California than to this District.  (*See* Declaration of Robert Fulghum, Exs. 26, 35-38, *VoIP-Pal v. AT&T, Inc.*, case no. 6:20-cv-00325-ADA (WDTX July 8, 2020), ECF No. 22-1.)  Additionally, it appears that three of the five inventors of the '606 patent reside much closer to the Northern District of California than this District, with those three residing in Vancouver, Canada, and the others residing in New Zealand, and New York.  (*Id*. at Exs. 30-34.)

Thus, this factor favors transfer to the Northern District of California.

### 5. The Additional Public Factors Weigh in Favor of Transfer to the Northern District of California or Are Neutral.

#### a. The Court Congestion Factor Weighs in Favor of Transfer or, at Worst, Is Neutral.

Courts analyzing this factor may consider the speed with which a case can be tried and resolved.  *In re Genentech, Inc.*, 566 F.3d at 1347.  While this Court sets quick schedules for its patent cases, the number of patent cases filed in this district far exceeds the number of patent cases that are assigned to Judge Koh.  This Division currently has over 400 patent cases pending, with over 300 of those cases filed in the first half of this year.  (Ex. 26.)  By contrast, Judge Koh has

just 14 open patent cases, four of which are the declaratory judgment actions related to the '606 patent.  (Ex. 27.)  As to the total number of pending civil cases, this Division has 566 open civil cases, whereas Judge Koh has 130 open civil cases.  (Exs. 28-29.)  Because of these differences, the Court congestion factor weighs in favor of transfer or is, at worst, neutral.

### b.      The Other Public Factors Are Neutral.

The local interest factor is neutral because neither party is headquartered in the Western District of Texas or the Northern District of California, and Amazon has facilities in both locations. The courts' familiarity with the governing law is also neutral because both courts are extremely familiar with patent law.  Finally, the avoidance of conflicts concerning the application of foreign law is also neutral because, to the extent any issues arise related to discovery in foreign jurisdictions, both courts are equally able to address those issues.

### B.      If Transfer Is Denied, this Case Should Be Stayed.

For reasons of judicial economy as discussed above, if this case is not transferred, Amazon joins the other defendants in asking that the case be stayed at least until Judge Koh has ruled on the motions to dismiss in the California cases.

## V.      CONCLUSION

Amazon has not moved to transfer many cases filed against it in this District because not all cases warrant transfer.  This case does due to the substantial overlap with issues already litigated in the Northern District of California and Judge Koh's familiarity with the plaintiff, the asserted patents, the technology at issue, and the specific disputed issues in the case.  For those reasons, movants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc. respectfully request that this case be transferred to the Northern District of California.[4]

---

[4] Amazon met conferred with VoIP-Pal's counsel by phone and email, but no agreement could be reached regarding the relief sought in this motion.

Dated:  July 15, 2020

Respectfully submitted,

*/s/ M. Craig Tyler*
M. Craig Tyler, Bar No. 00794762
Perkins Coie LLP
500 W 2nd St, Suite 1900
Austin, TX  78701-4687
Tel. No.  737.256.6113
Fax No.  737.256.6300

Daniel T. Shvodian, *Admitted Pro Hac Vice*
James F. Valentine, *Admitted Pro Hac Vice*
Wing H. Liang, *Admitted Pro Hac Vice*
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel. No. 650.838.4300
Fax No. 650.838.4350

ATTORNEYS FOR DEFENDANTS
Amazon.com, Inc.; Amazon Technologies, Inc.; Amazon.Com, Services LLC; and Amazon Web Services, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 15, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

_/s/ M. Craig Tyler_
M. Craig Tyler

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), counsel for Amazon has conferred with counsel for VoIP-Pal in a good faith effort to resolve the matter presented herein.  Counsel for VoIP-Pal op-poses the instant Motion and did not agree that this case should be transferred.

_/s/ Daniel T. Shvodian_
Daniel T. Shvodian