# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **VOIP-PAL.COM, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | **6:20-CV-00272-ADA** |
| v. | § | |
| | § | |
| **AMAZON.COM, INC.;** | § | |
| **AMAZON.COM SERVICES LLC; and** | § | |
| **AMAZON WEB SERVICES, INC.,** | § | |
| *Defendants.* | § | |

**PLAINTIFF VOIP-PAL.COM'S OPPOSED MOTION FOR PARTIAL
RECONSIDERATION OF CLAIM CONSTRUCTION ORDER**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION………………………………………………………………...…1

II.    FACTUAL BACKGROUND……………………………………………………….2

III.    LEGAL STANDARD………………………………………………………………3

IV.    ARGUMENT……………………………………………………………………….4

    A.  A Routing Message Does Not Require A TTL Field. ……………………………….4

    B.  Considering The Intrinsic Record As A Whole Shows That A Routing Message Does Not Require A TTL Field. ……………………………………………………6

V.    CONCLUSION……………………………………………………………………9

# TABLE OF AUTHORITIES

**Cases**

*Asetek Holdings, Inc. v. Coolit Sys.*, No. C-12-4498 EMC, 2013 U.S. Dist. LEXIS 170488 (N.D. Cal. Dec. 3, 2013) .................................................................................................................. 8

*Atser Research Techs., Inc. v. Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294 (W.D. Tex. Mar. 2, 2009) ............................................................................ 8

*Clare v. Chrysler Grp., LLC*, 819 F.3d 1323 (Fed. Cir. 2016) ............................................................. 8

*Curtiss-Wright Flow Control Corp. v. Velan Inc.*, 438 F.3d 1374 (Fed. Cir. 2006) ........................... 8

*eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745 (E.D. Tex. 2012) .................... 3

*Ferring B.V. v. Watson Labs., Inc.*, 3:11-cv-00481-RCJ-VPC, 2013 U.S. Dist. LEXIS 17536 (D. Nev. Feb. 6, 2013) ................................................................................................................. 8

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014) ............................................ 9

*In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002) ............................................................... 3

*Interdigital Commuc'ns., Inc. v. ZTE Corp.*, 1:13-cv-00009-RG, 2014 U.S. Dist. LEXIS 113316 (D. Del. Aug. 8, 2014) .............................................................................................................. 8

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352 (Fed. Cir. 2002) ................................. 3

*Liebel- Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) .............................................. 9

*Mediatek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461 (N.D. Cal. Mar. 5, 2014) ............................................................................................... 3

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010) ................. 3

*Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623 (N.D. Iowa 2013) ................ 9

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 440 F. Supp. 2d 120 (D. Conn. 2006) ..... 3

*WI-Lan, Inc. v. Acer, Inc.*, No. 2:07-CV-473-TJW-CE, 2010 U.S. Dist. LEXIS 138111 (E.D. Tex. Dec. 30, 2010) ......................................................................................................................... 3

*Wright Asphalt Prods. Co., LLC v. Pelican Ref. Co., LLC*, No. H-09-1145, 2012 U.S. Dist. LEXIS 73901 (S.D. Tex. May 29, 2012) ............................................................................................... 3

*Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 U.S. Dist. LEXIS 11163, at *9 (W.D. Tex. Jan. 27, 2017) ................................................................................................. 3

## TABLE OF ABBREVIATIONS

| ABBREVIATION | TERM |
|---|---|
| VoIP-Pal | Plaintiff VoIP-Pal.com, Inc. |
| Amazon | Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Web Services, Inc. |
| Defendant | Amazon |
| The '606 patent or the patent-in-suit | U.S. Patent No. 10,218,606 |
| The '005 patent | U.S. Patent No. 9,179,005 |
| The '864 patent | U.S. Patent No. 11,171,864 |
| TTL | Time to Live |
| PCT | Patent Cooperation Treaty |

I.      INTRODUCTION

VoIP-Pal respectfully requests that the Court reconsider and refine its construction of the term "routing message" because part of the construction is clearly erroneous.  The Court adopted Amazon's proposed construction of this term and construed it to mean "a message that includes a callee user name field, a route field, and a time to live field."[1]  While VoIP-Pal disagrees with this construction as a whole, by this Motion, VoIP-Pal only asks that the Court fine-tune this construction by removing the requirement that a routing message must have "a time to live field." In the '606 patent, a routing message is not defined by a TTL field.  Indeed, the TTL field has nothing to do with the routing—it has to do with billing.  It "holds a value representing the number of seconds the call is permitted to be active, based on subscriber available minutes and other billing parameters."[2]  Not only does the specification of the '606 patent expressly distinguish between routing and billing, but the entirety of the intrinsic record, which includes eleven other family members of the '606 patent, makes it abundantly clear that the TTL field is not a requirement of a routing message.  The Court's construction, however, would work a manifest injustice because it would require that all 12 U.S. patents in the family be limited to a routing message that has a TTL field even though several of those patents expressly claim TTL as an optional feature of a routing message.

The Court admitted that the parties' arguments for their respective constructions were closely counterposed, requiring the Court to go "back and forth … to try and get [the construction] right."[3]  What should not be open to debate, however, is the portion of Amazon's proposed

---

[1] Dkt. No. 87 at 2.
[2] Dkt. No. 1-1 at 21:55-60.
[3] Ex. 1 at 25:23-24.  All exhibits refer to exhibits to the Declaration of Lewis E. Hudnell, III.

1

construction, which the Court adopted, that requires a routing message to have a TTL field. Accordingly, VoIP-Pal respectfully requests that the Court reconsider and modify its construction of "routing message" to be "a message that includes a callee user name field and a route field."

## II.    FACTUAL BACKGROUND

The Court conducted a Claim Construction Hearing on February 15, 2023 at which the parties only argued one term—"routing message." The following table depicts the parties' proposals and the Court's constructions (preliminary and final):

| Term | VoIP-Pal's Proposal | Defendants' Proposal | Court's Preliminary Construction | Court's Final Construction |
|---|---|---|---|---|
| "routing message" | Plain and ordinary meaning | "a message that includes a callee user name field, a route field, and a time to live field." | Plain and ordinary meaning | "a message that includes a callee user name field, a route field, and a time to live field." |

Although the Court initially agreed with VoIP-Pal's proposed construction, the Court ultimately adopted Amazon's proposed construction. Yet the Court remained undecided as to the proper construction during the hearing, commenting that "every time [Amazon's counsel] finished I thought [he was] right. And every time [VoIP-Pal's counsel] finished I thought he was right."[4] Before the hearing, the Court's clerk advised the parties that "it is generally unlikely that the Court will select a party's originally proposed construction over the preliminary construction. As such, the Court believes that making arguments to fine-tune the preliminary construction may be more helpful."[5] In concluding its arguments, VoIP-Pal briefly argued that, at a minimum, the TTL filed should be excluded from the construction.[6] The parties, however, did not focus their arguments on whether the TTL field should be excluded from the final construction of "routing message." VoIP-Pal respectfully submits that such

---

[4] Ex. 1 at 26:11-13.
[5] Ex. 2.
[6] *Id.* at 24:10-25:6.

fine-tuning is not only more accurate but is necessary in this situation to avoid manifest injustice.

## III.  LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure provides that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[7] This Court may grant a motion for reconsideration if there is "the need to correct a clear error of law or prevent manifest injustice."[8] Several district courts, including district courts in this Circuit, have granted reconsideration of claim construction orders.[9]

In addition, the Federal Circuit has repeatedly endorsed "rolling claim construction" by district courts—that is, the practice of "revisit[ing] and alter[ing]" the court's "interpretation of the claim terms as its understanding of the technology evolves."[10]  Rolling claim construction is especially necessary "where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence."[11]  Indeed, Amazon admitted at the beginning of the Claim Construction Hearing that the issues concerning the term

---

[7] *See eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012).
[8] *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).
[9] *See, e.g.*, *Wright Asphalt Prods. Co., LLC v. Pelican Ref. Co., LLC*, No. H-09-1145, 2012 U.S. Dist. LEXIS 73901 (S.D. Tex. May 29, 2012); *WI-Lan, Inc. v. Acer, Inc.*, No. 2:07-CV-473-TJW-CE, 2010 U.S. Dist. LEXIS 138111 (E.D. Tex. Dec. 30, 2010); *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 440 F. Supp. 2d 120 (D. Conn. 2006).
[10] *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) (citing cases).
[11] *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *see also Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 U.S. Dist. LEXIS 11163, at *9 (W.D. Tex. Jan. 27, 2017) (quoting *Mediatek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 31461, at *9 (N.D. Cal. Mar. 5, 2014)) ("Accordingly, the final determination of the construction of any claim occurs at the close of trial and manifests itself in the form of jury instructions.").

"routing message" address "a highly technical area, the area of voice-over IP calling."[12]  Thus, reconsideration in this case is warranted.

IV.  **ARGUMENT**

   A.  **A Routing Message Does Not Require A TTL Field.**

The Court should remove the TTL field from the construction of the term "routing message" because the use of a TTL field concerns a billing-related concept, independent from the callee and route fields.  The TTL field has nothing to do with routing a communication and is not claimed in the '606 patent.  As the specification states, "[t]he time to live field 362 holds a value representing the number of seconds the call is permitted to be active, based on subscriber *available minutes and other billing parameters*."[13]  The TTL field relates to the billing aspects of the overall system disclosed in the specification and is not an essential aspect of routing a call.  Indeed, there is an entire section of the specification devoted to determining TTL that has nothing to do with routing.[14]

The specification states that the TTL field is used in one embodiment of the invention to determine a permissible length of a communication session: "[i]n accordance with another aspect of the invention, there is provided a method for determining a time to permit a communication session to be conducted."[15]  The TTL section of the specification explains that the TTL field is set based on the cost of a communication in comparison to the funds balance of the caller's account.  For example, in one embodiment, if a caller's funds balance or free time balance are not greater than 0, then TTL is set to 0 and the call is denied.[16]  In other cases, such as a network or cross-domain call, calling may be free, and TTL is set to 99999, in which case the call is treated as having

---

[12] Ex. 1 at 3:13-14.
[13] Dkt. No. 1-1 at 21:55-60.
[14] *Id.* at 28:45-31:40.
[15] *Id.* at 6:51-62; *see also id.* at 28:45-29:5 ("Referring to FIGS. 33A and 33B, a process for determining a time to live value for any of blocks 642 in FIG. 8C, 350 in FIG. 8A or 564 in FIG. 8D above is described.").
[16] *Id.* at 30:26-35; *see also id.* at 31:26-37, Fig. 33A (746, 748).

an effectively unlimited duration.[17]   In some scenarios, TTL may be appended to specific paths (routes) to limit communication session duration, but a routing message *need not limit session duration* in order to specify a path (route).[18]   The determination and use of the TTL field is a separate aspect of the invention, not related to routing, and is not an essential feature of a "routing message."

In contrast to the TTL field, other fields in the routing message are explicitly used for routing.  For example, the section of the specification entitled "Subscriber to Subscriber Calls Between Different Nodes," in which the example in Fig. 16 is discussed, explains the processing of the callee identifier in the routing message to route the call over a private network.[19]   There is no discussion in this section of computing the TTL—the call is free.[20]   In contrast, in the specification section entitled "Subscriber to Non-Subscriber Calls," in which the example of Fig. 25 is discussed, routing paths in a routing message to route the call over a public network are time-limited according to each path's cost.[21]   Regardless of the type of routing message used, the specification explains that the callee user name field and the route field are used to route a message, not the TTL field:

> Referring back to FIG. 1, the routing message whether of the type shown in FIG. 16, 25 or 32, is received at the call controller 14 and the call controller interprets the receipt of the routing message as a request to establish a call. …
>
> Where a routing message of the type shown in FIG. 32 is received by the call controller 14, the routing to gateway routine 122 shown in FIG. 4 may direct the processor 102 [sic] cause a message to be sent back through the internet 13 shown in FIG. 1 to the callee telephone 15, *knowing the IP address of the callee telephone 15 from the user name* [in the callee user name field].
>
> Alternatively, if the routing message is of the type shown in FIG. 16, *which identifies a domain associated with another node in the system* [in the route field], the call controller may send a SIP invite message along the high speed backbone 17 connected to the other node. The other node functions as explained above, in response to receipt

---

[17] *Id.* at Figs. 33A-B (700, 702, 730, 732, 752, 753), 28:63-66; *see also id.* at 29:60-30:1; 30:40-46.
[18] *Id.* at 27:25-39, Fig. 8C (642-646), Fig. 32.
[19] *Id.* at 21:10-23:49 (emphasis added).
[20] *Id.* at 21:25-34 (discloses TTL is set to an arbitrary "maximum" value, "99999, for example", to effect a free call; however, the route is determined by the routing message including a "caller [sic: callee] identifier" and an "identifier of a node on the private network"; *compare id.* at 2:5-8, 3:5-8).
[21] *Id.* at 23:50-25:60.

of a SIP invite message.[22]

Thus, unlike these other fields, the TTL field should not be included in the construction of "routing message" because it has nothing to do with routing and is not required to route a communication. Selecting a route for a call is distinct from choosing whether or not to limit a call session duration.

### B. Considering The Intrinsic Record As A Whole Shows That A Routing Message Does Not Require A TTL Field.

When viewed in the context of the entirety of the intrinsic record, it is apparent that the inventors did not intend the TTL field to be a required field of a "routing message" and that the TTL field is not required to route a message. The '606 patent is directed to inventive methods of "routing *and* billing."[23] Indeed, VoIP-Pal has obtained multiple patents distinctly focused on either *routing* or *billing*, based upon the same specification as the '606 patent, as shown in the following table:

| '606 Patent Family Member | Title |
|---|---|
| 8,542,815 | Producing routing messages for voice over IP communications |
| 8,774,378 | Allocating charges for communications services |
| 9,137,385 | Determining a time to permit a communications session to be conducted |
| 9,179,005 | Producing routing messages for voice over IP communications |
| 9,537,762 | Producing routing messages for voice over IP communications |
| 9,813,330 | Producing routing messages for voice over IP communications |
| 9,826,002 | Producing routing messages for voice over IP communications |
| 9,935,872 | Producing routing messages for voice over IP communications |
| 9,948,549 | Producing routing messages for voice over IP communications |
| 9,998,363 | Allocating charges for communications services |
| 10,218,606 | Producing routing messages for voice over IP communications |

---

[22] *Id.* at 27:40-59.
[23] *Id.* at 1:21-24.

|  |  |
|---|---|
| 11,171,864 | Determining a time to permit a communications session to be conducted |

Notably, while all the patents in the '606 patent family share the same specification, they do not share the same title.  The '606 patent is titled "Producing routing messages for voice over IP communications."  But other family members are titled "Allocating charges for communications services" or "Determining a time to permit a communications session to be conducted."  The different titles reflect the different inventions disclosed in the specification.  Indeed, the claims of U.S. Patent No. 11,171,864 are specifically directed to producing a routing message that includes a TTL field for holding a maximum allowable time for a communications session to be conducted.  These distinct inventions are evident early in the intrinsic record.  The PCT parent application of the '606 patent, *before* entering national stage as App. No. 12/513,147, was determined by PCT authorities to lack unity of invention because its "Group I" routing claims (operating a call routing controller to produce a routing message) were considered distinct from its "Group III" billing claims (determining a time to permit a communications session to be conducted).[24]

More importantly, the components of the routing message are claimed three different ways in the patent family: (1) a routing message with no mention of TTL in any claim (*e.g.*, in the '606 patent); (2) a routing message recited in an independent claim and a TTL value recited in a dependent claim (*e.g.*, in the '005 patent); and (3) a routing message and a TTL value in the same independent claim (*e.g.*, in the '864 patent).  The following table illustrates these three scenarios:

| (1) U.S. Patent No. 10,218,606 (claim 1) | (2) U.S. Patent No. 9,179,005 (claims 1 and 18) | (3) U.S. Patent No. 11,171,864 (claim 1) |
|---|---|---|
| 1. A method for routing communications in a packet switched communication system between a first participant device associated with a first participant and a second participant device associated with a second participant, the | 1. A process for producing a routing message for routing communications between a caller and a callee in a communication system, the process comprising:<br>… | 1. In a telecommunications network, a computer-implemented method of determining a time to permit a communication session by first and second participants to be conducted, the method comprising: |

---

[24] *See* Ex. 3, Written Opinion, PCT/CA2007/001956, Box IV (in file history of U.S. Patent No. 8,542,815).

| | | |
|---|---|---|
| first and second participant devices being associated with first and second network elements of the communication system, respectively, the method comprising:<br>…<br>when the second network element is determined to be the same as the first network element, producing a routing message identifying a first network address associated with the first network element, using at least one processor; and<br><br>when the second network element is determined not to be the same as the first network element, producing a routing message identifying a second network address associated with the second network element, using at least one processor;<br><br>wherein the packet switched communication system attempts to establish the communication from the first participant device to the second participant device based on at least one network address identified in the routing message.[25] | when at least one of said calling attributes and at least a portion of a callee identifier associated with the callee meet private network classification criteria, producing a private network routing message for receipt by a call controller, said private network routing message identifying an address, on the private network, associated with the callee; and<br><br>when at least one of said calling attributes and at least a portion of said callee identifier meet a public network classification criterion, producing a public network routing message for receipt by the call controller, said public network routing message identifying a gateway to the public network.[26] | …<br>producing a routing message that includes the maximum time to permit the communication session to be conducted, and sending the routing message to a controller to establish the communication session between a first communication device associated with the first participant and a second communication device associated with the second participant for a duration of up to the maximum time included in the routing message; and<br><br>… .[27] |
| | 18. The process of claim 17, further comprising causing said public network routing message to include a time value and a timeout value.[28] | |

Under the Court's claim construction, however, all of these claims require the routing message to have a TTL field despite the fact that the '864 patent's claims and some '005 patent claims already require as much. Applying the Court's claim construction renders claim language directed to TTL fields superfluous, which is improper.[29] Applying the Court's claim construction to the '005 patent violates the claim differentiation doctrine because independent claim 1 is not limited to a routing message including a time value.[30] Moreover, the Federal Circuit has held that claim differentiation

---

[25] Dkt. No. 1-1 at claim 1.
[26] Ex. 4 at claim 1.
[27] *Id.* at claim 18.
[28] Ex. 5 at claim 1.
[29] *See Interdigital Commuc'ns., Inc. v. ZTE Corp.*, 1:13-cv-00009-RG, 2014 U.S. Dist. LEXIS 113316, at *6 (D. Del. Aug. 8, 2014); *Asetek Holdings, Inc. v. Coolit Sys.*, No. C-12-4498 EMC, 2013 U.S. Dist. LEXIS 170488, at *13 (N.D. Cal. Dec. 3, 2013); *Ferring B.V. v. Watson Labs., Inc.*, 3:11-cv-00481-RCJ-VPC, 2013 U.S. Dist. LEXIS 17536, at *22 (D. Nev. Feb. 6, 2013); *Atser Research Techs., Inc. v. Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294, at *31-32 (W.D. Tex. Mar. 2, 2009).
[30] *See Curtiss-Wright Flow Control Corp. v. Velan Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (stating the claim differentiation "refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim.").

can apply across patents in the same family.[31] The claims for the '005 and '864 patents show that the inventors knew how to claim a routing message that holds a time value for how long a communication session can be conducted. Thus, the fact that the claims of the '606 patent do not recite a TTL value and other patents in the same patent family do evidences an intent by the inventors *not* to limit the routing message claimed in the '606 patent to having a TTL field. The PCT routing claims, too, recited a time-dependent element only in the *dependent* claims.[32]

Finally, it bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."[33] Although VoIP-Pal disputes that the specification discloses a single embodiment of a routing message, even if it did, Amazon presented no evidence demonstrating a clear intent on the part of the inventors to limit a routing message to having a TTL field using words or expressions of manifest exclusion or restriction. Indeed, the above comparison of claims across different patents in the same patent family as the '606 patent shows otherwise. Amazon invites the Court to commit clear error by incorporating a billing-related feature of an exemplary embodiment—a TTL field—into the term "routing message" that has nothing to do with routing and consequently implies that an entire family of patents directed to different features should be limited to a single embodiment of a routing message. Such a result is manifestly unjust and should be corrected.

## V.   CONCLUSION

In conclusion, VoIP-Pal respectfully requests that the Court reconsider its final

---

[31] *See Clare v. Chrysler Grp., LLC*, 819 F.3d 1323, 1330 (Fed. Cir. 2016) (applying the doctrine of claim differentiation across different patents); *see also Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623, 686 (N.D. Iowa 2013) ("The doctrine of claim differentiation supports the conclusion that independent claims of related patents that use different claim terms must have different scope.").

[32] Ex. 6 at claims 27 and 57.

[33] *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

construction of the term "routing message" and construe the term to mean "a message that includes a callee user name field and a route field." Nothing more is needed for routing a communication.

Dated: March 10, 2023

>*/s/ Lewis E. Hudnell, III*
>HUDNELL LAW GROUP P.C.
>Lewis E. Hudnell, III
>lewis@hudnelllaw.com
>Nicolas S. Gikkas
>nick@hudnelllaw.com
>800 W. El Camino Real Suite 180
>Mountain View, California 94040
>T: 650.564.3698
>F: 347.772.3034
>
>**ATTORNEYS FOR PLAINTIFF**
>**VOIP-PAL.COM, INC.**

**CERTIFICATE OF SERVICE**

I certify that on March 10, 2023, I electronically filed the foregoing Plaintiff VoIP-Pal.com's Opposed Motion for Partial Reconsideration of Claim Construction Order with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Lewis E. Hudnell, III
Lewis E. Hudnell, III